IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

```
F I L E
DEC 1 6 2008
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA
```

ANGELA D. ADAMS,        )
                        )
            Plaintiff,  )
V.                      )        Civil Action No. 1:08cv560
                        )
PENNSYLVANIA NATIONAL MUTUAL )
CASUALTY INSURANCE COMPANY, )
                        )
            Defendant.  )
_____)

## MEMORANDUM OPINION

Plaintiff brought this action against Pennsylvania National Mutual Casualty Insurance Company ("Penn National") claiming that Penn National was obligated to pay the Plaintiff $1 million in partial satisfaction of a judgment that the Plaintiff obtained against John S. Habit ("Habit") in the Circuit Court for the County of Fairfax, Virginia.  As pled in the Amended Complaint, Penn National had issued a policy of liability insurance to Lee Bailey's Transmissions, Inc. ("Lee Bailey's") that was in effect on May 24, 2002, when a vehicle operated by the Plaintiff was involved in an accident with a vehicle operated by Habit.  At the time of the accident, Habit was operating a vehicle that he had borrowed from a co-worker, Tim Henry ("Henry").  Both Habit and Henry were employed by Lee Bailey's at the time of the accident.

The Plaintiff was insured as a result of the accident and filed an action in the Fairfax County Circuit Court against Habit for his negligent operation of the vehicle and against Lee Bailey's claiming it was vicariously liable for Habit's actions. At the trial on the merits which concluded on March 28, 2006, the jury returned a verdict in favor of the Plaintiff and against Habit in the amount of $1,500,000.00. The jury found in favor of Lee Bailey's. The Plaintiff filed a Petition for Appeal in the Virginia Supreme Court and a subsequent Petition for Rehearing, both of which were denied. The judgment has been partially satisfied by the insurance company that insured the vehicle that Habit was driving at the time of the accident. The Plaintiff now seeks to recover an additional $1 million from Penn National under the insurance policy ("Policy") issued to Habit's employer, Lee Bailey's, in further partial satisfaction of the judgment.

The vehicle owned by Henry and operated by Habit at the time of the accident was not owned by Lee Bailey's and was not listed on the schedule of automobiles covered under the Policy. Instead, the Plaintiff claims that Henry's vehicle met the definition of a covered automobile under the Policy because it allegedly had been borrowed by Lee Bailey's prior to the accident.

The Plaintiff bases her allegation that Lee Bailey's had borrowed Henry's van upon the fact that the employees of Lee Bailey's customarily hung the keys to their vehicles on a board in

2

the office so that the vehicles could be moved, if necessary, if they were blocking another vehicle.  On the day of the accident, Habit's vehicle was blocked by another vehicle and thus he used Henry's vehicle to avoid having to locate the owner of the vehicle that had blocked Habit's car.  Habit took Henry's vehicle to run some personal errands and eat lunch and the Plaintiff has not alleged in this case that Habit performed any business for Lee Bailey's from the time he took the vehicle until the accident occurred.

On or about June 7, 2001, Penn National issued a policy of liability insurance to Lee Bailey's, a Virginia company that was engaged in the automobile repair business in Fairfax County, Virginia.  The Policy names Lee Bailey's as the insured and provides liability insurance coverage of up to $1 million for any one accident or loss.

Lee Bailey's was owned by Charles C. Habit.  Lee Bailey's had a shop truck that employees could use if they were doing any company business, but empoloyees could not use the shop truck for personal business.

Charles Habit was out of town on the day of the accident. John Habit and Tim Henry were both working at Lee Bailey's that day.  John Habit's vehicle was parked at Lee Bailey's shop but had been blocked by another parked vehicle, so Habit used Henry's truck.  Normally, employees parked their vehicles where they could

3

not be blocked.  There was no company policy or practice that if a co-worker's vehicle was easy to get to, it could be borrowed by another co-worker. Anything that had to do with one employee borrowing another employee's vehicle was between the employees and did not involve the employer, Lee Bailey's.

If the employees parked on the lot, then they would usually leave their keys hanging on a board so that if someone's car was blocked by an employee's car, another employee would be able to use the car owner's keys to move the blocking car.  There was no practice at the shop whereby one employee would use the keys of another employee's car to leave the premises.  Instead, the common practice was for an employee to seek permission from the owner of the blocking car before moving it.

Habit used Henry's vehicle on the day of the accident because he could not find the key of the vehicle that had blocked in Habit's vehicle and "it was just easier."  Habit did not know whether the vehicle that blocked his was a customer's vehicle or the vehicle of somebody across the street at a different shop. Habit was not planning to do anything work related on the trip that he was making with Henry's vehicle.  Before leaving the shop in Henry's van, Habit had changed out of his business clothes and put on his favorite shirt if his trip was not business related, he did not like going out in his business shop clothes.

At the time of the accident, Habit was driving to deposit some money in his girlfriend's bank account.  The accident occurred about five minutes after he left the shop where the vehicle he was driving struck the Plaintiff's vehicle.

The van owned by Henry was not listed in the Policy on the schedule of covered automobiles owned by Lee Bailey's.

Following the accident, the Plaintiff filed an action seeking damages for her injuries in Fairfax County Circuit Court against Habit and Lee Bailey's.  The Motion for Judgment alleged that Habit was acting within the scope of his employment for Lee Bailey's at the time of the collision.  The Motion for Judgment also alleged that Lee Bailey's was vicariously liable for the acts and omissions of Habit.

The case was tried before a jury beginning March 20, 2006.  At the conclusion of the case, the jury returned a verdict in favor of the Plaintiff and against Habit in the amount of $1,500,000.00  and returned its verdict in favor of Lee Bailey's on Plaintiff's claim against it.

During the trial of the tort case, Angela Adams and Habit entered into a binding high-low agreement whereby any judgment against Habit individually only would be reduced to $75,000.00, with each side retaining his or her appellate rights.  A proposed Order of Judgment incorporating the terms of the high-low agreement and endorsed by all counsel of record, including counsel for Adams

and counsel for Habit, was submitted to the judge of the Fairfax
County Circuit Court for entry.  The judge of the Fairfax County
Circuit Court refused to enter the proposed Order of Judgment
because the Fairfax County Circuit Court had lost jurisdiction to
enter any further orders in the case.  The Plaintiff has been paid
$75,000.00 by the insurance company that insured Henry's vehicle.

The standard for summary judgment is governed by Rule 56(c) of
the Federal Rules of Civil Procedure.  Once a motion for summary
judgment is properly made and supported, the opposing party has the
burden of showing that a genuine dispute exists.  See Matsushita
Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-587
(1986).  "The mere existence of a scintilla of evidence in support
of the plaintiff's position will be insufficient; there must be
evidence on which the jury could reasonable find for the
plaintiff."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252
(1986).  The non-moving party may not manufacture a genuine issue
of material fact "through mere speculation or the building of one
inference upon another."  Cooke v. Manufactured Homes, Inc., 998
F.2d 1256, 1260 (4th Cir. 1993).  Summary judgment is appropriate
when, after discovery, a party has failed to make a "showing
sufficient to establish the existence of an element essential to
that party's case, and on which that party will bear the burden of
proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322
(1986).

6

Under Virginia law, the burden of proof in an insurance coverage dispute is on the party seeking to establish that the vehicle was covered by the policy at the time of the accident. Hartford Fire Ins. Co. v. Davis, 436 S.E.2d 429, 431 (Va. 1993). The same rule applies to an injured party who seeks to enforce a third party's contractual rights under an automobile insurance policy. Erie Insurance Exchange v. Meeks, 288 S.E.2d 454, 456-457 (Va. 1982).

In the present case, the Plaintiff seeks to enforce Habit's alleged right to coverage under the Policy. Accordingly, the Plaintiff has the burden of proving that Habit's use of the vehicle at the time of the accident was covered under the Policy.

The court must construe the insurance contract . Commercial Union Ins. Co. v. Charleston Marine Leasing Co., 843 F. Supp. 124, 128 (E.D. Va. 1994). Under Virginia law, "whether contract language is ambiguous is a legal question to be determined by the Court." Id. (citing Nehi Bottling Co. v. All-Am. Bottling Corp., 8 F.3d 157, 161 (4th Cir. 1993)). If an "agreement is complete on its face and is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself. This is so because the writing is the repository of the final agreement of the parties." Schneider v. Cont. Casualty Co., 989 F.2d 728, 731 (4th Cir. 1993)(quoting Lerner v. Gudelsky Co., 334 S.E.2d. 579, 584 (Va. 1985)). "A contract is not deemed

7

ambiguous merely because the parties disagree as to the meaning of the language they used to express their agreement." <u>Ross v. Craw</u>, 343 S.E.2d 312, 316 (Va. 1986). "An ambiguity exists when language admits of being understood in more than one way or refers to two or more things at the same time." <u>Amos v. Coffey</u>, 320 S.E.2d 335, 337 (Va. 1984).

In the present case, the policy language relied upon by the Plaintiff is clear and unambiguous. The Policy provides that anyone is insured while using an automobile Lee Bailey's owns, hires or borrows if Lee Bailey's gave permission for the use. Since Lee Bailey's did not own or hire the vehicle, the only issues are whether it borrowed that vehicle and, if so, whether Habit was using it with Lee Bailey's permission. Thus, the operative words are "borrow" and "permission". Neither is ambiguous. Because these words are not defined in the Policy, they are given their generally accepted meanings. According to the Merriam Webster Dictionary, "borrow" means "to receive with the implied or expressed intention of returning the same or an equivalent." "Permission" means "the act of permitting." "Permitting" means "to consent to expressly or formally." At least one court has expressly ruled that the precise language used in the Policy in this case is "clear and explicit." <u>Schroeder v. Bd. of Supervisors of La. State Univ.</u>, 591 So. 2d. 342, 346 (La. 1991).

8

Since there is no ambiguity in the Policy, the Court has the duty to construe it in light of the evidence.  <u>Commercial Union Ins. Co. v. Charleston Marine Leasing Co.</u>, 843 F. Supp. 124, 128. Accordingly, this matter is ripe for summary judgment.

The undisputed facts in this case do not support a conclusion that Lee Bailey's borrowed Henry's vehicle.  Instead, Habit borrowed the vehicle for his own personal use.  The Plaintiff contends that Lee Bailey's "borrowed" the vehicle because it allegedly received some benefit from Habit's decision to use Henry's vehicle rather than locate the owner of the vehicle that was blocking his car.  She bases her contention on the fact that employees were expected to leave the keys to their vehicles on a board in case the vehicles needed to be moved around the lot to accommodate other cars.  However, the undisputed evidence is that Habit used Henry's vehicle on the day of the accident because he could not find the key of the vehicle that had blocked in his own car and this solution was easier.  Habit did not know whether the vehicle that blocked his car was a customer's vehicle or the vehicle of somebody across the street at a different shop.  There was no company policy or practice that if a co-worker's vehicle was easy to access, it could be borrowed by another co-worker, and there was no practice at the shop whereby one employee would grab the keys of whatever car was available and leave the premises.

9

The Plaintiff argues that Lee Bailey's benefitted from Habit's use of the vehicle because it prevented another employee from having to assist in moving a customer's car.  There is no evidence to support that assertion. Merely because Lee Bailey's may have received some incidental benefit from Habit's personal use of his co-employee's vehicle does not mean that Lee Bailey's borrowed that vehicle. See Davis v. Cont'l Ins. Co., 656 N.E.2d 1005, 1007-1008 (Oh. Ct. App. 1995) ("To define borrow as encompassing every instance in which a policyholder receives some benefit from another's use of an automobile not owned by the policyholder suggests that when, for example, a friend gratuitously runs a casual errand for a policyholder, the policyholder has borrowed the automobile used for the errand.  Such a definition is unworkable.")

The same reasoning must apply in this case.  Otherwise, Lee Bailey's business automobile policy would provide coverage any time one employee borrows another employee's car regardless of the purpose for which the car was borrowed or where the car was driven. Clearly, that is not the intent of the Policy.  Additionally, although John Habit was the owner's son, he was not an officer of the company and there is no evidence that he was authorized by Lee Bailey's to borrow vehicles on the company's behalf.  Similarly, there is no evidence that Lee Bailey's had ever borrowed vehicles owned by employees for other employees to use for personal errands.

10

Moreover, the term "borrow" as it relates to coverage under automobile liability insurance policies means that the insured receives both the benefit of the borrowed vehicle's use and the temporary possession, dominion, or control of the vehicle. See 8A Steven Plitt, Daniel Maldonado & Joshua D. Rogers, Couch on Insurance § 118:47 (3d ed. 2008). ("Despite any incidental benefit to the insured, the fact that the insured is actually operating the automobile does not necessarily give rise to the control necessary to fall within the meaning of the term 'borrow' as used within the policy...The owner must surrender possession control [sic] to the insured to a degree in which the use of the vehicle is directed by the insured, not the owner.").

In the present case, Henry, the owner of the car, did not surrender the control of the car to Lee Bailey's. Instead, he surrendered control to Habit, an employee of Lee Bailey's who was using the vehicle to run some errands and go to lunch. Habit was not planning to do anything work-related on the trip, but instead was driving to deposit money in his girlfriend's bank account. If an employee of Lee Bailey's was required to do something that was work related, then he would usually use the company truck. Before leaving the shop, Habit changed out of his business clothes and put on his favorite shirt because if it was not business-related, he did not like going out in his business suit since he did not like the stigma of being a shop guy. Clearly, Habit borrowed the

11

vehicle for his own purposes and not to benefit his employer.

Assuming, *arguendo*, that Lee Bailey's did in fact borrow Henry's vehicle when Habit took it to run personal errands, the vehicle was not being used with the permission of the named insured.   The law is clear in Virginia that a named insured generally cannot give permission to someone else to use a vehicle that the named insured neither owns nor has sufficient interest in so as to entitle the named insured to the possession and control of the vehicle.   <u>Pham v. Hartford Fire Ins. Co.</u>, 419 F.3d 286, 291 (4th Cir. 2005); <u>Stone v. Liberty Mutual Ins. Co.</u>, 478 S.E.2d. 883 (Va. 1996); <u>Nationwide Mutual Ins. Co. v. Cole</u>, 124 S.E.2d. 203 (Va. 1962).

In the present case, Lee Bailey's did not own Henry's vehicle nor have any ownership interest in the vehicle.   Accordingly, Lee Bailey's had no power to grant permission to Habit or to anyone else to use Henry's vehicle.

Aside from the fact that Lee Bailey's did not have the power to grant permission to Habit for his use of Henry's vehicle, Lee Bailey's did not grant such permission as a matter of fact. Charles Habit was the owner of the business and its sole officer. Although John Habit was his son and performed some management functions, he was not the named insured under the Policy nor was he an owner or officer of the named insured.   The Virginia Supreme Court has previously held that an employee who may have been a

12

"legal representative" of his employer was not its "legal representative" with respect to the employer's rights and duties under its insurance policy. <u>Ins. Co. of North Am. v. Perry</u>, 134 S.E.2d. 418 (Va. 1964).   There, a Norfolk City policeman was performing his duties and was struck and killed by an uninsured motorist.   His estate claimed that he was covered under the uninsured motorist coverage in a policy issued to the City of Norfolk.   The Virginia Supreme Court held that the police officer was not a named insured under the policy merely by virtue of his status as an employee of the city.   "The court cannot substitute the name of each of the many employees of the city in place of that of the city as the named insured and thus stretch the coverage of the policy to include each such employee and all of the members of his household specified in the statute."   <u>Id.</u> at 420.

Although the present case is not an uninsured motorist case, the Plaintiff is attempting to argue that John Habit as an employee of Lee Bailey's had the power under the Policy to grant himself permission to use Henry's vehicle. As the Virginia Supreme Court stated, every employee of a company cannot be substituted for the named insured and, by the same token, every employee of a company does not have the power or authority to grant permission to use someone else's vehicle.

During the trial of the underlying tort case, the Plaintiff and Habit entered into a binding high-low agreement whereby any

13

judgment against Habit individually only would be reduced to $75,000.00. The terms of that agreement were embodied in a proposed Order of Judgment that was endorsed by all counsel of record including counsel for Plaintiff and counsel for Habit and then submitted to the Fairfax County Circuit Court for entry. The Fairfax County Circuit Court refused to enter that Order because it was presented after the Final Order previously entered by the Court had become final. Thus, the Court did not have jurisdiction to enter the proposed Order of Judgment.

The proposed Order of Judgment is a written embodiment of the binding high-low agreement entered into between the Plaintiff and Habit. The Order recited that the Plaintiff, through her attorney, was requesting that judgment be entered against Habit in the amount of $75,000.00. Although the Court refused to enter the Order, it is still a written confirmation of the binding agreement entered into by the Plaintiff in which she agreed that she would not seek the recovery of any more than $75,000.00 from Habit. She has been paid $75,000.00 by another insurer.

The written agreement contained in the proposed Order of Judgment is complete, unambiguous and unconditional. It reflects by its own terms the "binding" agreement entered into between the parties during the trial.

The high-low agreement was a compromise and settlement of the underlying tort claim and/or amounted to an accord and

14

satisfaction.   As a result of that agreement and the subsequent payment by the other insurer, the Plaintiff has waived any further claim and/or is estopped from collecting any additional damages from or on behalf of Habit.   Accordingly, even if the Policy issued by Penn National provides additional coverage to Habit, the Plaintiff can recover no more than the amount that she previously agreed to accept and thus Penn National is not obligated to pay any portion of the judgment entered by the Fairfax County Circuit Court.

For the foregoing reasons, summary judgment should be granted to the Defendant.


_____/s/_____
Claude M. Hilton
United States District Judge

Alexandria, Virginia
December /6 , 2008

15